IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GARY LEE MEDLEY and
TERESA MEDLEY,

          Plaintiffs,

v.                                        CIVIL ACTION NO. 2:23-cv-00736

STATE FARM FIRE AND CASUALTY
COMPANY, and CHRISTOPHER GAUNT,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Plaintiffs' Motion for Partial Summary Judgment on Insurance Coverage Issue* (Document 43), the *Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment on Insurance Coverage Issue* (Document 44), the *Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment on Insurance Coverage Issue* (Document 47), the *Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment on Insurance Coverage Issue* (Document 49), and all attached exhibits. For the reasons stated herein, the Court finds the motion should be denied.

**FACTUAL ALLEGATIONS[1]**

The Plaintiffs are Gary Lee Medley and Teresa Medley, a married couple, who seek to recover under their homeowners insurance policy issued by State Farm Fire and Casualty

---

[1] All facts are drawn from the parties' submissions and are recounted in the light most favorable to the Defendants as the non-moving parties.

1

Company ("State Farm"), a Defendant in this matter. The Plaintiffs live at 576 Thomas Hollow Road in Tornado, West Virginia, known as Honeysuckle Farm, which consists of a home, two barns, and riding trails. On April 1, 2023, a windstorm collapsed one of the Medleys' barns onto their Zetor 4341 farm tractor. The cost to repair the tractor is estimated at $40,079. At the time of the storm, the Plaintiffs' homeowners insurance policy held through State Farm (State Farm Policy No. 48-BS-D178-6) was in effect.

After the windstorm, the Plaintiffs submitted a claim to State Farm to recover insurance proceeds for the tractor. This claim was assigned to Christopher Gaunt, a State Farm claim specialist and a Defendant in this case. On May 23, 2023, Mrs. Medley emailed State Farm requesting information about the pending claim for the damages to the tractor. In the email, Mrs. Medley testified that "[w]e have had no income from our business as we operated out of our barn" and requested loss of income payment, as well as costs for transporting and storing their harvested hay in a rental facility. (Document 47-2.) Mr. Gaunt testified in his deposition that he interpreted the email as confirmation that the Medleys were running a business out of their barn and had suffered a loss due to its collapse.

In her deposition, Mrs. Medley testified that Honeysuckle Farm is a sole proprietorship owned solely by Mr. Medley. For over thirty years, the Medleys offered horse boarding, training, and riding lessons on the farm. The horse boarding, training, and riding lessons ended in October 2022. However, the Medleys still keep a horse outside at Honeysuckle Farm for a friend, who pays $350 a month for the horse's hay and grain. Mrs. Medley does not describe the arrangement with the friend as horse boarding. Additionally, the Medleys also purchased two horses from a nurse, who previously boarded the horses in Honeysuckle Farm's barn. While Mrs. Medley stated that this purchase occurred in June 2023, Mr. Medley testified it occurred in 2022.

Additionally, a Facebook page for Honeysuckle Farm was still available as of April 1, 2023, and the Honeysuckle Farm's business license was active until April 30, 2023. The Medleys also continue to use the business checking account from 2022 and advertise their farm with signs at the end of Thomas Hollow Road. In September 2022, Mrs. Medley advertised horse boarding, riding lessons, and trail rides, although Mr. Medley clarified that the Medleys received no income from these activities in 2023.

The Medleys also sell chicken eggs on their property and are certified to do so through the Department of Agriculture. The Medleys' foster children sold the eggs from the end of Thomas Hollow Road. Mrs. Medley stated that the chickens and egg sales were intended to give the children something to focus on and something from which to earn money. The egg sale proceeds were split between chicken feed, egg cartons, the children, and the Medleys. After the barn collapsed, many of the chickens scattered. The remaining chickens were sold, and the Medleys did not sell eggs after the windstorm. Mrs. Medley stated that selling the eggs earned $1,200 in 2021, $2,500 in 2022, and $600 in the first three months of 2023.

The Medleys used the now damaged tractor to cut hay, mow the pasture field, and clean ditch lines. The hay cut by the tractor fed the Medleys' horses, cattle, and goats. Additional bales of hay were purchased to feed the boarded horses. The hay baled by the tractor and the purchased hay were not kept separate and were fed, without regard to its source, to boarded and personal horses alike. Mr. Medley testified in his deposition that there is "[n]o need at all" for the tractor to be used in caring for the chickens or collecting their eggs. (Document 44.)

For personal property used or intended for use in a business, recovery under the State Farm Policy is limited to $1,500. The policy defines a business as "any full-time or part-time activity. . . of an economic nature. It does not matter whether it is continuous or regular, is a secondary or

3

supplemental source of income, or is an insured's principal means of livelihood. Profit and profit motive are irrelevant." (Document 44.) Excepted from the definition of business are "incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the insured" and "any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery."[2] (*Id.*)

After Mrs. Medley's May 2023 email, the Plaintiffs obtained counsel who contacted State Farm on August 22, 2023, about the tractor claim. Mr. Gaunt asked the Plaintiffs' attorney, Mr. Berthold, whether the tractor was used for personal or business purposes. Mr. Berthold was unsure and needed to consult with the Plaintiffs. After talking to his clients, Mr. Berthold stated that the tractor is used for "home, business[,] and everything" on the Plaintiffs' other properties and on Honeysuckle Farm, which he described as "more or less an unincorporated business." (Document 47.)

As a result of Mr. Gaunt's conversation with the Plaintiffs' attorney, he accepted that the tractor was being used for business purposes. This acceptance was confirmed by Danny Ruth, Mr. Gaunt's team manager, who testified in a deposition that knowledge about the exact type of business being run is not necessarily required to consider whether a business is operating on a property. Particularly when considering the size and price of the Plaintiffs' tractor, he testified

---

[2] The State Farm Policy does not cover personal property vehicles designed to travel on public roads and require vehicle registration. If a vehicle does not travel on public roads or require registration, it will be protected by the State Farm Policy if it is either "used primarily to service the insured location" or "designed for assisting persons with disabilities." (Document 44.) The Medleys' tractor does not travel on public roads or require vehicle registration.

that it is "reasonable" to question whether such a tractor is being used for a business. (Document 47.) Therefore, Mr. Gaunt notified the Plaintiffs that only $1,500 of the tractor's damages would be covered by State Farm because that is the policy limit for personal property used or intended for use in a business. Payment in that amount was issued to the Plaintiffs for the tractor claim.

After the Medleys were unsuccessful in recovering additional insurance payout for the damages to the tractor, they filed this suit on October 5, 2023, in the Circuit Court of Kanawha County, West Virginia, against State Farm and Christopher Gaunt. The action was removed to this Court on November 13, 2023. The Plaintiffs assert claims for breach of contract, common-law bad faith, and unfair trade practices.

## STANDARD OF REVIEW

### A. *Summary Judgment*

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the nonmoving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No. 11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986)). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

### B. Determination of Insurance Policy Coverage

The Supreme Court of Appeals of West Virginia has instructed that the "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. Pt. 1, *Tennant v. Smallwood,* 568 S.E.2d 10 (W. Va. 2002) (citation and quotation omitted). "[W]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co.,* 172 S.E.2d 714, 715 (W. Va. 1970) (citations omitted).

On the other hand, if a policy's provisions are ambiguous, they will be liberally construed in favor of the insured. *Aetna Cas. & Sur. Co. v. Pitrolo,* 342 S.E.2d 156, 160 (W. Va. 1986) (citations omitted) ("since insurance policies are prepared solely by insurers, any ambiguities in the language of insurance policies must be construed liberally in favor of the insured.") However, "such construction should not be unreasonably applied to contravene the object and plain intent of the parties." Syl. Pt. 6, *Hamric v. Doe*, 499 S.E.2d 619 (W. Va. 1997) (quoting Syl. Pt. 2, *Marson Coal Co. v. Ins. Co. of State of Pennsylvania*, 210 S.E.2d 747 (W. Va. 1974)). A policy provision is ambiguous if it is "reasonably susceptible of two different meanings or . . . of *such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning.*" *Glen Falls Inc. Co. v. Smith*, 617 S.E.2d 760, 768 (W. Va. 2005) (quoting Syl. Pt. 5, *Hamric*, 499 S.E.2d 619 (emphasis in original)).

If coverage is not intended to apply, the policy should clearly indicate that insurance is not available. "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring

such provisions to the attention of the insured." *Satterfield v. Erie Ins. Property and Cas.*, 618 S.E.2d 483, 487 (W. Va. 2005) (quoting Syl pt. 10, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), overruled on other grounds by *Parsons v. Halliburton Energy Services, Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016)).

## DISCUSSION

The primary issue in this case is the extent to which the damage to the Plaintiffs' tractor is covered under the State Farm Policy. This question hinges on whether the tractor was used for business purposes as defined in the State Farm Policy. The scope of "property used or intended for use in a business" is relevant to this question to determine whether summary judgment is appropriate here.

The Plaintiffs state that availability of insurance coverage is decided as a matter of law if the material facts are not in dispute. They contend that State Farm has the burden of proving an insurance policy exclusion when seeking to avoid liability through that exclusion. Thus, the Plaintiffs conclude that State Farm must establish the facts necessary to prove an operation of the exclusion. Specifically, State Farm must prove that the tractor was used or intended for use in a business at the time of the storm, which the Plaintiffs argue State Farm has failed to do.

Regarding whether property is used in a business in the insurance damage context, the Plaintiffs point to authority by the Supreme Court of Appeals of West Virginia, which requires consideration of how the property is used, whether compensation was received, and the insured's intent. (Document 44) (citing *W. Va. Ins. Co. v. Jackson*, 200 W. Va. 588, 490 S.E.2d 675 (W. Va. 1997)). The Plaintiffs also refer to a Northern District of Indiana decision that quoted cases from Indiana state courts and found that the "proper focus for determining 'use' is at the time of the accident," and that a potential business motive is insufficient to convert personal property to

business property. (*Id.*) (quoting *Bachman v. AMCO Ins. Co.*, 897 F. Supp. 2d 780, 789 (N.D. Ind. 2012) (citing *Am. Family Mut. Ins. Co. v. Ginther*, 803 N.E.2d 224 (Ind. Ct. App. 2004); *Singer v. Nat'l Fire Ins. Co. of Hartford*, 264 A.2d 270 (N.J. Super. Ct. Law Dev. 1970)).

The Plaintiffs also argue that the State Farm Policy is ambiguous because it does not clarify whether property once used for business purposes can become personal property. Accordingly, they argue the policy should be strictly construed against State Farm. Lastly, the Plaintiffs point to an Ohio appeals court insurance coverage case, which held that "[a]ctivities related to a business that may result in a de minimis increase in risk and did not cause the loss or damage should not preclude coverage under an insurance contract." (*Id.*) (quoting *Byers v. Motorists Ins. Cos.*, 863 N.E.2d 196, 203) (Ohio App. 4th Dist. 2006)). They argue that this decision is instructive because their chicken business profit was de minimis, and the tractor was not involved in that business.

In response, the Defendants state that in the absence of ambiguity, a court is to give effect to the plain meaning of an insurance policy. Here, the Defendants argue that the plain meaning of "property used or intended for use in a business" from the State Farm Policy applies to property that has been, is currently, or is intended to be used for business. To support this, the Defendants cite cases from the Oklahoma Supreme Court and the Pennsylvania Superior court with similar limiting policy language: "used at any time or in any manner for any [business or business purpose]." (Document 47) (quoting *Shadoan v. Liberty Mut. Fire Ins. Co.*, 894 P.2d 1140 (Okla. 1994), overruled on other grounds by *Hamilton v. Northfield Ins. Co.*, 473 P.3d 22 (Okla. 2020)); *Zawierucha v. Phila. Contributionship Ins. Co.*, 740 A.2d 738 (Pa. Super. 1999)). Those courts found that the key issue was not whether the property at issue was currently used for business, but whether it had *ever* been used for business purposes.

The Defendants also point to a recent case by the Intermediate Court of Appeals of West Virginia, which held that the phrase "used in whole or in part for business purposes" in an insurance policy exclusion is unambiguous and should be given its plain meaning. (*Id.*) (quoting *Scafella v. Eire Ins. Co.*, 894 S.E.2d 556 (W. Va. App. 2023)). Finally, the Defendants argue that there is a genuine issue of material fact regarding when the Plaintiffs ceased operation of their businesses and whether the tractor was used for these businesses. Thus, they argue that the conflicting statements and evidence can only be resolved by a jury and not on summary judgment.

In their reply, the Plaintiffs clarify that the business discussed in Mrs. Medley's initial email is the chicken business, not the horse boarding business. They state there is no factual dispute about the tractor's use in the chicken business, as Mr. Medley's deposition provides that the tractor is not needed for it. The Plaintiffs further assert that Mr. Gaunt's claim notes do not indicate that he discussed the meaning of "business" as used in the State Farm Policy with Mr. Berthold. They contend Mr. Gaunt's omission was improper since West Virginia regulations require insurers denying a claim to specify the policy language relied upon. The Plaintiffs also argue that the Honeysuckle Farm Facebook page, business license, and checking account do not establish how the tractor was used at the time of the storm. Finally, the Plaintiffs point out that the State Farm Policy does not contain the phrase "used at any time," unlike the policies cited by the Defendants to support the relevance of the tractor's prior business use.

The Court finds that the phrase "property used or intended for use in a business" in the State Farm Policy applies only to the property's use at the time of the qualifying peril and its intended future use. While the Defendants cite *Shadoan* and *Zawierucha* to argue that the State Farm Policy encompasses past use, this Court disagrees. In those cases, the insurance policies limited coverage to property "used *at any time* or in any manner for any business." *Shadoan*, 894

10

P.2d at 1142; *Zawierucha*, 740 A.2d at 739 (emphasis added). However, the State Farm Policy does not contain such an expansive phrase. It does not limit recovery for damages to property used *at any time* for any business, it only limits recovery for damages to property "used or intended for use in a business." Additionally, *Scafella* addresses the definition of "structure" in the policy at issue there, not the scope of the analogous phrase "used in whole or in part for business purposes," which would be comparable to the State Farm Policy. 894 S.E.2d at 559.

In *Pepper v. Allstate Ins. Co.*, the court found that "the average person could interpret the phrase [property used or intended for use in a business] as only referring to items currently used for business purposes." 20 A.D.3d 633, 636 (N.Y. App. Div. 2005) (the plaintiffs' property, which has been previously used in a landscaping business, did not fall within a policy exclusion nearly identical to the one in the State Farm Policy). Had State Farm intended to include property that had previous or *past* business use, it could have used more expansive language like that in *Shadoan* and *Zawierucha*, particularly where it did add language for "intended use" which would affect *future* business use. Because insurance policies must be strictly construed against the insurer, the Court finds that it would be inappropriate to deny the Plaintiffs recovery based on the tractor's prior use in their horse business, assuming there is evidence to prove the horse business had ceased operation prior to the windstorm.

The Court also finds a factual dispute exists regarding whether the Medleys used their tractor for a business purpose, as defined in the State Farm Policy. A jury drawing all reasonable inferences from the evidence in favor of the Defendants could determine that the Medleys were using the tractor for their horse business at the time of the windstorm that destroyed the barn, limiting the tractor's damages to $1,500. This factual dispute precludes summary judgment.

When an insurance company invokes a policy exclusion to avoid liability, it must prove that the exclusion applies to the facts of the case. *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1,8 (W. Va. 1998) (citing Syl. Pt. 7, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987)). The Defendants point to several relevant facts, including: (1) Mrs. Medley's email about their lack of income from their business and hay storage concerns; (2) Mr. Berthold's statement that the tractor was used for business, based on information from the Medleys; (3) testimony from Danny Ruth about Mr. Gaunt's conversation with Mr. Berthold; (4) conflicting statements, as compared before and after litigation commenced, from the Plaintiffs about when the horse business ended; (5) Mr. Medley's testimony that hay cut by the tractor and purchased hay were fed to personal and boarded horses without certainty of its source; (6) Mrs. Medley's testimony that a friend pays $350 per month to keep her horse outside at Honeysuckle Farm and for hay (7) conflicting statements about the purchase date of two boarded horses from a nurse; (8) and evidence about Honeysuckle Farm's Facebook page, business license, checking account, signage, and advertisements for new business in community groups.

It is undisputed that the tractor was used to mow hay, that the Medleys at one point received compensation for boarding horses, that they purchased hay to support the boarded horses, and that Mr. Medley cannot determine what hay (purchased or tractor-mowed) went to which horses (boarded or personal). What *is* in dispute is when the operation of the horse business ceased. Construing all inferences in favor of the Defendants, the business may have continued as late as June 2023—after the windstorm—when the two boarded horses may have been purchased from the nurse. This factual dispute is material because whether the horse business and the tractor's use in it ceased before or after the windstorm will be determinative of the outcome of the case. Accordingly, the Plaintiffs' motion must be denied.

12

**CONCLUSION**

WHEREFORE, after thorough review and careful consideration, and for the reasons stated herein, the Court **ORDERS** that the *Plaintiffs' Motion for Partial Summary Judgment on Insurance Coverage Issue* (Document 43) be **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: November 14, 2024

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA