IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GARY LEE MEDLEY and
TERESA MEDLEY,

            Plaintiffs,

v.                                       CIVIL ACTION NO.   2:23-cv-00736

STATE FARM FIRE AND CASUALTY
COMPANY, and CHRISTOPHER GAUNT,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion for Partial Summary Judgment on Behalf of Defendants State Farm Fire and Casualty Company and Christopher Gaunt on the Issue of Punitive Damages* (Document 45), the *Memorandum of Law in Support of Motion for Partial Summary Judgment on Behalf of Defendants State Farm Fire and Casualty Company and Christopher Gaunt on the Issue of Punitive Damages* (Document 46), the *Plaintiffs' Response in Opposition to Defendants State Farm Fire and Casualty Company and Christopher Gaunt's Motion for Partial Summary Judgment on the Issue of Punitive Damages* (Document 48), and all attached exhibits. After careful consideration of the motion and the entire record herein, the Court finds the motion should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiffs are Gary Lee Medley and Teresa Medley, a married couple, who seek to recover under their homeowners insurance policy issued by State Farm Fire and Casualty

Company ("State Farm"), a Defendant in this matter.  The Plaintiffs live in Tornado, West Virginia, on a property known as Honeysuckle Farm, which consists of a home, two barns, and riding trails.  On April 1, 2023, a windstorm collapsed one of the Medleys' barns onto their Zetor 4341 farm tractor.  The cost to repair the tractor is estimated at $40,079.  At the time of the storm, the Plaintiffs' homeowners insurance policy held through State Farm (State Farm Policy No. 48-BS-D178-6) was in effect.

After the windstorm, the Plaintiffs submitted a claim to State Farm to recover insurance proceeds for the tractor.  This claim was assigned to Christopher Gaunt, a State Farm claim specialist and a Defendant in this case.  On May 23, 2023, Mrs. Medley emailed State Farm requesting information about the pending claim for the damages to the tractor.  In the email, Mrs. Medley stated that "[w]e have had no income from our business as we operated out of our barn" and requested loss of income payment, as well as costs for transporting and storing their harvested hay in a rental facility.  (Document 47-2.)  Mr. Gaunt testified in his deposition that he interpreted the email as confirmation that the Medleys were running a business out of their barn and had suffered a loss due to its collapse.

In her deposition, Mrs. Medley testified that Honeysuckle Farm is a sole proprietorship owned solely by Mr. Medley.  For over thirty years, the Medleys offered horse boarding, training, and riding lessons on the farm.  The horse boarding, training, and riding lessons ended in October 2022.  However, the Medleys still keep a horse outside at Honeysuckle Farm for a friend, who pays $350 a month for the horse's hay and grain.  Mrs. Medley does not describe the arrangement with the friend as horse boarding.  Additionally, a Facebook page for Honeysuckle Farm was still available as of April 1, 2023.  In September 2022, Mrs. Medley advertised horse boarding, riding

lessons, and trail rides, although Mr. Medley clarified that the Medleys received no income from these activities in 2023.

The Medleys also sell chicken eggs on their property and are certified to do so through the Department of Agriculture. The Medleys' foster children sold the eggs from the end of Thomas Hollow Road. Mrs. Medley testified that the chickens and egg sales were intended to give the children something to focus on and something from which the children could earn money. The egg sale proceeds were split between chicken feed, egg cartons, the children, and the Medleys. After the barn collapsed, many of the chickens scattered. The remaining chickens were sold, and the Medleys did not sell eggs after the windstorm. Mrs. Medley stated that selling the eggs earned $1,200 in 2021, $2,500 in 2022, and $600 in the first three months of 2023.

The Medleys used the now damaged tractor to cut hay, mow the pasture field, and clean ditch lines. The hay cut by the tractor fed the Medleys' horses, cattle, and goats. Additional bales of hay were purchased to feed the boarded horses. Mr. Medley testified in his deposition that there is "[n]o need at all" for the tractor to be used in caring for the chickens or collecting their eggs. (Document 44.)

For personal property used or intended for use in a business, recovery from the State Farm Policy is limited to $1,500. The policy defines a business as "any full-time or part-time activity. . . of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an insured's principal means of livelihood. Profit and profit motive are irrelevant." (Document 44.) Excepted from the definition of business are "incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the insured" and "any

3

occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery."[1]  (*Id*.)

After Mrs. Medley's May 2023 email, the Plaintiffs obtained counsel who contacted State Farm on August 22, 2023, about the tractor claim.  Mr. Gaunt asked the Plaintiffs' attorney, Mr. Berthold, whether the tractor was used for personal or business purposes.  Mr. Berthold was unsure and needed to consult with the Plaintiffs.  After talking to his clients, Mr. Berthold stated that the tractor is used for "home, business[,] and everything" on the Plaintiffs' other properties and on Honeysuckle Farm, which he described as "more or less an unincorporated business." (Document 47.)  There were no follow-up contacts by Mr. Berthold to contradict the information he gave Mr. Gaunt regarding the Plaintiffs' use of the tractor.

Pursuant to Mr. Gaunt's conversation with the Plaintiffs' attorney, he accepted that the tractor was being used for business purposes.  This acceptance was confirmed by Danny Ruth, Mr. Gaunt's team manager, who testified in a deposition that knowledge about the exact type of business being run is not necessarily required to consider whether a business is operating on a property.  Particularly when considering the size and price of the Plaintiffs' tractor, he testified it is "reasonable" to question whether such a tractor is being used for a business.  (Document 47.) As a result, Mr. Gaunt notified the Plaintiffs that only $1,500 of the tractor's damages would be

---

[1] The State Farm Policy does not cover personal property vehicles designed to travel on public roads and require vehicle registration.  If a vehicle does not travel on public roads or require registration, it will be protected by the State Farm Policy if it is either "used primarily to service the insured location" or "designed for assisting persons with disabilities."  (Document 44.)  The Medleys' tractor does not travel on public roads or require vehicle registration.

4

covered by State Farm because that is the policy limit for personal property used or intended for use in a business. Payment in that amount was issued to the Plaintiffs.

After the Medleys were unsuccessful in recovering additional insurance payout for the damages to the tractor, they filed this suit on October 5, 2023, in the Circuit Court of Kanawha County, West Virginia, against State Farm and Christopher Gaunt. The action was removed to this Court on November 13, 2023. The Plaintiffs assert claims for breach of contract, common-law bad faith, and unfair trade practices.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must

view all the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.  *Hoschar*, 739 F.3d at 169.  However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.  "At the summary judgment stage, the nonmoving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."  *Perry v. Kappos*, No. 11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986)).  If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Defendants argue that summary judgment is proper on the Plaintiffs' request for punitive damages.  They state that the available evidence is insufficient to show that either Mr. Gaunt or State Farm acted with actual malice as a matter of law.  Specifically, they contend that

6

Mr. Gaunt reasonably concluded the tractor was used for business based on the tractor's industrial size, Mrs. Medley's email about the business and income loss, and Mr. Berthold's statement that the tractor was used by the Medleys for business purposes. Even if this conclusion was mistaken, they argue it was a reasonable interpretation, rather than intentionally malicious or fraudulent.

In response, the Plaintiffs argue that there is evidence of intentional malice sufficient for an award of punitive damages. They assert that Mr. Gaunt failed to further investigate the Medleys' business activities after receiving Mrs. Medley's initial email. Mr. Gaunt also did not provide the policy definition of "business" to Mr. Berthold, which the Plaintiffs state was required by West Virginia regulation. Therefore, they assert that a rational jury could conclude that the Defendants intentionally disregarded facts that could cast doubt on the denial of the tractor claim. Finally, they contend that State Farm's refusal to pay for their significant loss of the tractor, despite knowing for months that it owed damages to the Plaintiffs, demonstrates actual malice.

The Defendants counter that relying on Mr. Berthold's statement regarding the tractor's business use, particularly when he appeared in this case to assist the Plaintiffs with their homeowners insurance claim, was reasonable. They also argue that because Mr. Berthold did not follow up with Mr. Gaunt about these statements, it was reasonable for State Farm to conclude that there was no dispute over the tractor's business use. Finally, they contend that since State Farm did not deny the claim outright but only applied a special limit on recovery, the regulation the Plaintiffs cite does not apply.

In West Virginia, absent an independent intentional tort committed by the defendant, punitive damages are not generally available in an action for breach of contract. *Berry v. Nationwide Mutual Fire Ins. Co.*, 381 S.E.2d 367, 374 (W. Va. 1989) (citing *Hayseeds, Inc. v.*

7

*State Farm Fire & Cas.*, 352 S.E.2d 73, 80 (W. Va. 1986)). However, in cases where an insured seeks to recover for its insurer's refusal to pay its claim, an exception allowing for punitive damages is found. The West Virginia Supreme Court of Appeals instructed in *Hayseeds,* that "an insurer is not liable for punitive damages by its refusal to pay on a claim unless such refusal is accompanied by a malicious intention to injure or defraud." *Hayseeds*, 352 S.E.2d at 80. In an effort to establish a "bright line standard, [which is] highly susceptible to summary judgment for the defendant," the *Hayseeds* court held that punitive damages may be awarded for an insurer's failure to settle a claim where a plaintiff meets the "high threshold of [establishing] actual malice in the settlement process." *Id*. at 80-81. The court's use of "actual malice" meant that a plaintiff had to demonstrate that the insurance "company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." *Id*. The Court cautioned that "[u]nless the policyholder is able to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury." *Id*. at 81. Moreover, an insurance company's "preconceived disposition to deny the claim . . . d[oes] not rise to the level of malice" that is sufficient to support an award of punitive damages. *Id*.

The Court finds that no evidence has been presented to show that the Defendants' conduct rises to the level of actual malice, thereby precluding the Plaintiffs from obtaining punitive damages. It is undisputed that Mrs. Medley's email refers to a business—whether that be the horse business or the chicken business—for which the Plaintiffs were losing income. It is also undisputed that Plaintiffs' counsel informed Mr. Gaunt that the tractor was used for both business and personal purposes by the Medleys and never provided information to the contrary. As a

result, the evidence indicates that Mr. Gaunt had reasonable basis to believe there was an ongoing business on the Medleys' property involving the tractor, since the tractor was the property for which the Plaintiffs sought recovery.

Further, although the Plaintiffs argue that the Defendant's post litigation refusal to pay the full repair cost supports an award of punitive damages, the conflicting evidence as to when the horse business ended together with Mrs. Medley's email and Plaintiffs counsel's representation that the tractor was used for both personal and business purposes does not support a finding of malice.  Moreover, Mr. Gaunt's failure to define "business", as specified in the State Farm Policy, for Plaintiff's counsel presents no basis for a finding of malicious conduct as no evidence has been presented to indicate that Mr. Gaunt had any reason to believe that counsel was unfamiliar with the applicable policy language.

Although the available damages is an issue this Court generally reserves for the close of a plaintiff's case, and although the Court has given the Plaintiffs the benefit of all reasonable inferences from the evidence, the Plaintiffs have failed to set forth a genuine issue of material fact or show that the Defendants denied their claim with actual malice, such that they would be entitled to punitive damages.  Accordingly, the Defendants' motion for partial summary judgment on the issue of punitive damages must be granted.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, and for the reasons stated herein, the Court **ORDERS** that the *Motion for Partial Summary Judgment on Behalf of Defendants State Farm Fire and Casualty Company and Christopher Gaunt on the Issue of*

*Punitive Damages* (Document 45) be **GRANTED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: November 14, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

10